UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | 1:11-cr-00033-JAW-02 |
| | ) | |
| TERRA WHALEN | ) | |

**ORDER ON DEFENDANT'S MOTION TO VACATE, SET ASIDE OR REMAND SENTENCE**

In Terra Whalen's pro se motion to vacate, set aside, or remand her sentence, she argues that her sentence is unconstitutional in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). She also urges the Court to consider certain other facts and caselaw, and vacate or at least reduce her sentence on the basis of these considerations. The Court denies the motion because Ms. Whalen has not provided any legal ground on which her sentence may be modified.

**I.    STATEMENT OF FACTS**

**A.    The Crime**

On November 10, 2010, Terra Whalen was involved in a bizarre burglary. *Tr. of Proceedings* 45:19-46:2 (ECF No. 106) (*Tr.*). Ms. Whalen was with her boyfriend, Troy Bryant, when he decided to steal a boat from a marina in Hampden, Maine. *Id.* Mr. Bryant hitched the boat to his Dodge Durango and traveled around the Bangor, Maine area with Ms. Whalen, hauling the stolen boat. *Id.* 8:8-18. Ms. Whalen later said she thought Mr. Bryant had permission to take the boat. *Id.* After traveling around with the stolen boat in tow, Mr. Bryant and Ms. Whalen picked up another couple. *Id.*

The foursome ended up in Bradford, Maine, a rural suburb of Bangor, and Mr. Bryant pulled into someone's yard. *Id.* 8:20-9:1. Mr. Bryant hopped out of the sport utility vehicle, walked over to the house, broke a side window, and entered the garage. *Id.* 9:1-3; 14:1-3. Mr. Bryant made his way to the house and rummaged around. There, he found some property to his liking, including three firearms, and began to remove it. *Id.* 9:3-6; *Am. Prosecution Version of the Offense* at 1 (ECF No. 65) (*Prosecution Version*). Mr. Bryant yelled for Ms. Whalen to come over and help him. *Id.* 9:6-7.

Ms. Whalen got out of the SUV and helped Mr. Bryant by taking the stolen property from him and loading it, including the firearms, into the Durango. *Id.* 9:4-13. Mr. Bryant exited the house, returned to the Durango, unhooked the stolen boat, left it in the driveway of the burglarized house, and drove off. *Id.* 9:15-18. The foursome proceeded to Ms. Whalen's apartment, where she helped Mr. Bryant unload the stolen firearms and other personal property, and put it in her apartment. *Id.* 9:17-19. Later, Mr. Bryant took the guns and sold them; Ms. Whalen was not involved in the gun sales. *Id.* 9:20-21. On November 7, 2011, Terra Whalen pleaded guilty to possession of stolen firearms in violation of 18 U.S.C. § 922(j). *Minute Entry* (ECF No. 76). At the Rule 11 hearing, she admitted the truth of contents of an Amended Prosecution Version of the Offense. *Prosecution Version*; *Minute Entry* (ECF No. 76).

**B.    The Punishment**

On April 12, 2012, the Court held a sentencing hearing. *Tr.* 2:1-55:14. The Probation Office had prepared a Presentence Investigation Report (PSR) and at the sentencing hearing, Ms. Whalen admitted the accuracy of the contents of the PSR, which contained a description of the offense. *Id.* 4:13-20.

1.  **Guideline Issues**

At the sentencing hearing, Ms. Whalen raised two guideline sentencing issues: (1) whether she should obtain a minor role reduction under § 3B1.2 of the federal sentencing guidelines, United States Sentencing Commission, *Guidelines Manual* (USSG); and (2) whether she should receive a four-level enhancement under USSG § 2K2.1(b)(6)(B) for possession of the firearms in connection with another felony offense. Ms. Whalen's argument about the minor role reduction emphasized her role as the girlfriend to the actual burglar, Troy Bryant, and maintained that she was essentially along for the ride until Mr. Bryant pulled into the farmhouse yard in Bradford. *Tr.* 8:1-6. She acknowledged that Mr. Bryant entered the house and started handing out property, including firearms, but Ms. Whalen contended that Mr. Bryant ordered her to help him load the stolen property into the Durango and she did as she was told. *Id.* 7:21-25.

The Court was skeptical about the request for a minor role reduction. *Tr.* 11:1-12-8. First, Ms. Whalen was no stranger to the criminal justice system. At the age of only 26, she had an extensive criminal record totaling four juvenile adjudications and seventeen adult convictions, including three prior theft convictions, five prior forgery (one an aggravated forgery) convictions, and a

criminal history category VI. PSR at 6-13. Next, Ms. Whalen was living with Mr. Bryant, both were profoundly addicted to drugs, neither was working, and the money to buy the illegal drugs had to come from somewhere. *Tr.* 11:14-13:4.

Additionally, without objection by Ms. Whalen, the Government introduced evidence of a grand jury transcript from the other female passenger about what happened when Mr. Bryant and Ms. Whalen returned to the truck, having loaded the stolen property. *Id.* 14:10-17. The female passenger testified that as they were driving away, Ms. Whalen became upset with her, accused her of being a rat and a bitch, grabbed her by the hair, and hit her. *Id.* 15:1-6. The male passenger confirmed the female passenger's story. *Id.* 16:5-12. Based on all of this evidence, the Court concluded that Ms. Whalen was not entitled to a minor role reduction. *Id.* 19:3-20:16.

The second guideline issue was whether the four-level increase in § 2K2.1(b)(6)(B) for possession of the firearms in connection with another felony offense should apply. *Id.* 21:2-24:13. Here, the Court quoted Comment 14 to § 2K2.1:

> Subsection (b)(6)(B) applies in a case of a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the burglary.

*Id.* 24:5-10 (quoting in part § 2K2.1, comment n. (14(B)). The Court concluded that there was "no escaping the fact that the comment requires the application of the enhancement to Ms. Whalen's case," and the Court applied it. *Id.* 24:10-13.

As backdrop to Ms. Whalen's sentencing hearing, the Court had already sentenced Mr. Bryant, the actual burglar, who had handed out the weapons and later sold them. *Minute Entry* (ECF No. 77). Unlike in Ms. Whalen's PSR, the Government failed to make a timely request for a four-level enhancement under § 2K2.1(b)(6)(B) for Mr. Bryant and the Probation Office had not mentioned the enhancement in his PSR. At Mr. Bryant's sentencing hearing, the Court noticed the uneven treatment of Mr. Bryant and Ms. Whalen and questioned the prosecutor. *Id.* The prosecutor admitted making a mistake in failing to catch the absence of the enhancement in Mr. Bryant's case and moved the Court to apply it. *Id.* The Court rejected the motion as untimely. *Id.*

Having found that the four-level enhancement should be applied to Ms. Whalen, *Tr.* 23:19-24:13, the Court was concerned about the prospect of substantially disparate sentences between two similarly-situated co-defendants. *Id.* 24:14-18, 46:21-47:12. Mr. Bryant had a criminal history category IV and without the four-level enhancement, he faced a guideline range of 30 to 37 months; with the enhancement, he would have faced a guideline range of 46 to 57 months. *Id.* 21:25-22:6. The Court imposed a sentence on Mr. Bryant of 37 months. *J.* (ECF No. 79); *Tr.* 22:6-7.

Because Ms. Whalen had a criminal history category VI, including a prior violent felony, the impact of the four-level enhancement was significantly greater for her than it would have been for Mr. Bryant. *Tr.* 22:13-23-16. Without the four-level enhancement, Ms. Whalen would have faced a guideline sentence of 77 to 96

5

months and with the four-level enhancement, she faced a guideline sentence of 110 to 137 months, reduced at the top end by the statutory maximum of 120 months. *Id.* 23:7-16. Although the Court concluded that the four-level enhancement applied to Ms. Whalen, the Court stated that it would address the disparity between Mr. Bryant's and Ms. Whalen's guideline ranges in its analysis of the 18 U.S.C. § 3553(a) factors, specifically the need to avoid unwarranted sentencing disparities. *Id.* 24:14-18.

### 2. The Punishment

The Court calculated Ms. Whalen's guideline sentence range to be 110 to 137 months, based on a total offense level of 25 and a criminal history category of VI, capped by a statutory maximum of 120 months, for a net guideline range of 110 to 120 months. *Tr.* 24:22-25:20. The Court, however, sentenced Ms. Whalen under 18 U.S.C. § 3553(a) to a non-guideline period of seventy-two months incarceration, three years of supervised release, and a $100.00 special assessment; the Court did not impose a fine. *J.* (ECF No. 89); *Tr.* 49:12-50:7.

## II. THE PARTIES' POSITIONS

### A. Terra Whalen's Motion

On December 4, 2013, Ms. Whalen, acting pro se, moved the Court to "vacate and/or set aside her sentence." *Pro Se Mot. to Vacate, Set Aside and or Remand Sentence Pursuant to 18 U.S.C. 3582* (ECF No. 97) (*Def.'s Mot.*). Ms. Whalen argues that, in light of *Alleyne v. United States*, "[i]t is unconstitutional for a Legislature to remove from the Jury the assessment of facts that increase the prescribed range of

6

penalties to which a criminal defendant is exposed." *Id.* at 1 (internal punctuation omitted). Ms. Whalen puts forth that "[b]y enhancing the defendant of the above said elements, petitioner was placed in a much higher sentencing guideline, as well as triggering a minimum mandatory sentence, a fact which other than a prior conviction does increase the maximum punishment for an offense which is the functional equivalent of an element of a greater offense than of the one covered by the Jury's verdict." *Id.* at 2. Ms. Whalen asserts that the *Alleyne* decision is retroactively applicable to the instant motion under the exception for "watershed rules of criminal procedure" in *Teague v. Lane*, 489 U.S. 288 (1989).

Ms. Whalen acknowledges that her "prior criminal history was known prior to offering the plea agreement and [she] understood that to be the case." *Def.'s Mot.* at 3. She then notes, however, that "[a]ll criminal history previously was during the years of my youth of 18-21 years old," and that she "has suffered from addiction since she was 14 years old, as well as having suffered normal trauma of a divorce at a young age." *Id.* Ms. Whalen then asserts that "she was assured this during the sentencing process and plea that those factors were considered and her maximum would be that offered in the plea agreement, as it was explained to her, the plea guidelines was a wors[t] case scenario of sentence." *Id.* She further asks the Court to consider that Mr. Bryant was sentenced to thirty-six months[1] as compared to her seventy-two months, that a recent study on white collar crime sentences documents an "overall disparity of men versus women," and that she has worked diligently at

---

[1] Ms. Whalen is under the misimpression that Mr. Bryant received a sentence of 36 months. He actually received a sentence of 37 months. *J.* (ECF No. 79). This one-month difference has no effect on Ms. Whalen's legal arguments.

7

drug rehabilitation. *Id.* at 3-4. In sum, she asks the Court to "consider all of these factors and lead the way in prison reform for helping folks who clearly made bad choices in life and want to make a fresh start to be able to return to their children and support them as quickly as possible." *Id.* at 4.

Ms. Whalen has subsequently made two supplemental fillings, in which she asks the Court to consider the Smarter Sentencing Act of 2014, S. 516, 113th Cong. (2014), *Additional Attachs.* (ECF No. 103); and *Rosemond v. United States*, 134 S. Ct. 1240 (Mar. 5, 2014), *Additional Attachs.* (ECF No. 109).

### B. The Government's Response

On March 3, 2014, the Government responded that "[s]ummary dismissal of Ms. Whalen's latest pleading is warranted for at least five reasons." *Gov't's Mot. for Summ. Dismissal of "Mot. to Vacate, Set Aside or Remand Sentence Pursuant to 18 U.S.C. [§]3582" and Supporting Mem. of Law* at 14 (ECF No. 110) (*Gov't's Opp'n*). First, the Government argues that although Ms. Whalen has brought her motion under 18 U.S.C. § 3582, she does not qualify for any of the exceptions to the general rule stated in § 3582(c) that "once imposed, a sentence cannot be modified." *Gov't's Opp'n* at 15-16 (citing *United States v. Havener*, 905 F.3d 3, 6 (1st Cir. 1990)).

Next, the Government asserts that if the motion is treated as a habeas petition under 28 U.S.C. § 2255, the claim must be considered procedurally defaulted because it was not brought within the one-year statute of limitations period in § 2255(f). *Id.* at 16. The Government notes that this period begins to run on "the date on which the judgment of conviction becomes final," *id.* (quoting §

8

2255(f)(1)), which would in this case be April 26, 2012—the date on which a notice of appeal would have been due pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A). *Id.* (citing *McKoy v. United States*, 2:09-cr-00056-DBH-1, 2013 U.S. Dist. LEXIS 19366, at *1-3 (D. Me. Jan. 4, 2013)). The Government asserts that the § 2255(f)(1) deadline expired on April 26, 2013, and therefore the instant motion—signed and dated by Ms. Whalen on November 29, 2013, and filed with the Court on December 4, 2013—is not timely. The Government submits that the other triggering events in § 2255(f) do not save her petition, and in particular that the Court should not extend the one-year deadline under § 2255(f)(3) because this District has previously found *Alleyne* not to be retroactively applicable on collateral challenge. *Id.* at 16-17 (citing *Al-Rikabi v. United States*, No. 2:07-cr-00106-GZS, 2014 U.S. Dist. LEXIS 20568, at *14-17 (D. Me. Jan. 3, 2014) (recommended decision), *aff'd*, 2014 U.S. Dist. LEXIS 19559 (D. Me. Feb. 18, 2014)). The Government also insists that Ms. Whalen faces another procedural obstacle, namely that because she did not appeal this Court's application of three sentencing enhancements, she cannot collaterally challenge these enhancements because she has "not even attempted to carry [the] heavy burden" of showing "cause and actual prejudice" or "actual innocence," under *Bousley v. United States*, 523 U.S. 614, 622-24 (1998). *Gov't's Opp'n.* at 17-18.

The Government then argues that Ms. Whalen's *Alleyne* argument fails on the merits for three reasons. *Id.* at 18. First, Ms. Whalen has never been subject to a statutory minimum term of imprisonment, the situation addressed by the *Alleyne*

9

Court. *Id.* at 18-19. Second, the First Circuit has reaffirmed that judicial fact-finding regarding guideline sentencing enhancements is a proper role for the district court, as is the application of a preponderance of the evidence standard for such enhancements. *Id.* (citing *United States v. Doe*, 741 F.3d 217, 234 (1st Cir. 2013)). Last, Ms. Whalen admitted the truth of the prosecution version of the offense, *see Prosecution Version* at 1-6, thereby providing a lawful factual basis for the Court's sentencing determinations. *Def.'s Mot.* at 18-20.

Finally, the Government maintains that the "other factors" Ms. Whalen has raised, such as her need to care for her children, her term of incarceration as compared to her co-conspirator's term, and the argument that her criminal history category overstates her past behavior, do not provide a basis for granting Ms. Whalen's motion. *Id.* at 20. None of these factors concerns any of the exceptions enumerated in § 3583(c). *Id.* Nor do they allow her to pursue § 2255 relief, because she failed to raise these issues on appeal and cannot meet the "cause and actual prejudice" or "actual innocence" standards required to excuse her procedural default. *Id.* at 20-21.

### C.     Terra Whalen's Reply

Ms. Whalen did not file a reply to the Government's response.

## III.   DISCUSSION

### A.     *Alleyne v. United States*

In *Alleyne*, the United States Supreme Court "extended the rule requiring a jury to find, beyond a reasonable doubt, any fact that increases a maximum

statutory penalty to any fact that requires imposing a statutory minimum penalty." *Doe*, 741 F.3d at 233 (citing *Alleyne*, 133 S. Ct. at 2160). Although Ms. Whalen contends that her sentence of 72 months violated *Alleyne*, it did not. The Court did not enforce a mandatory minimum sentence in her case and, Ms. Whalen's earnest assertion to the contrary aside, *Alleyne* has no possible effect on her sentence.[2]

More specifically, Ms. Whalen's application of *Alleyne*—suggesting that the facts giving rise to the calculation of her federal sentencing guideline range calculation should have been submitted to a jury—was eviscerated by the First Circuit's commentary in *Doe:*

> [A]s the Supreme Court went to great lengths to point out, there remains a place for "judicial factfinding" at sentencing, even in the post-Alleyne world. As the Court explicitly told us, judicial factfinding is still permissible "within the range authorized by law." The import of all this is that it remains within the sentencing court's discretion to judicially find facts informing the sentence actually imposed, provided that any such fact does not trigger a mandatory minimum punishment or alter a statutory maximum, and that the ultimate sentence remains within the range of penalties set forth in the statute of conviction. In such a situation, Alleyne does not apply, and the sentencing court may continue to find facts based upon a preponderance of the evidence.

---

[2] Even if *Alleyne* applied, which it does not, Ms. Whalen would not benefit from its application. This is because she admitted the truth of the contents of the prosecution version during her guilty plea and the accuracy of the facts in the PSR during her sentencing hearing. The Court made its guideline calculations in accordance with her admissions. After admitting the truth of these facts, Ms. Whalen may not now be heard to dispute them. *See United States v. Booker*, 543 U.S. 220, 244 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"); *United States v. Wilson*, 185 Fed. Appx. 6, 8 (1st Cir. 2006). It is true that the Court considered portions of a transcript of a witness's grand jury testimony. However, Ms. Whalen did not object to the admissibility of that transcript and in any event its contents were cumulative.

Moreover, this District has concluded, subject to review by the First Circuit, that *Alleyne* is not retroactive. *See United States v. Phillips*, No. 2:10-cr-136-DBH-04, 2014 U.S. Dist. LEXIS 16287 (D. Me. Feb. 10, 2014); *United States v. Reynoso*, No. 2:08-cr-111-DBH, No. 2:12-cv-165-DBH, 2014 U.S. Dist. LEXIS 5202 (D. Me. Jan. 15, 2014); *Al-Rikabi*, 2014 U.S. Dist. LEXIS 20568, at *14-20; *United States v. Butterworth*, No. 2:06-cr-62-DBH-01, 2:13-cv-282-DBH, 2013 U.S. Dist. LEXIS 177574 (D. Me. Dec. 18, 2013).

*Doe*, 741 F.3d at 234. Here, the Court judicially found facts related to its calculation of the proper guideline range for Ms. Whalen and not the statutory maximum and minimum penalties applicable to her. Under *Doe*, this Court's fact-finding, based as it was largely on Ms. Whalen's own admissions, was permissible.

Nor does 18 U.S.C. § 3582 support Ms. Whalen's requested relief. Ms. Whalen's references to that statute presumably relate to § 3582(c),[3] which imposes a general rule that "[t]he court may not modify a term of imprisonment once it has been imposed." None of the three exceptions to that rule applies here. The first exception addresses motions to reduce the term of imprisonment that have been filed by the Bureau of Prisons, which is not the case here. § 3582(c)(1)(A). The next

---

[3] The full text of § 3582(c) is as follows:

The court may not modify a term of imprisonment once it has been imposed except that--
(1) in any case--
  (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
    (i) extraordinary and compelling reasons warrant such a reduction; or
    (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
  (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

does not apply because Ms. Whalen has not indicated that a reduction to her sentence is "otherwise expressly permitted by statute," nor that her motion concerns either a clerical error or any assistance she provided to the government in investigating or prosecuting another person. § 3582(c)(1)(B); *see Mandatory Plea Agreement Supplement* (indicating "[t]here is no cooperation agreement in this case") (ECF No. 75). Finally, Ms. Whalen has not suggested that her sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," nor is the Court aware of changes adopted by the Sentencing Commission that would affect her sentence. § 3582(c)(2).

In her motion, Ms. Whalen suggests that she received an unduly harsh sentence because she is female. *Def.'s Mot.* at 3. She notes that the co-defendant, Troy Bryant, who is the father of her two children, received a sentence of only 36 (actually 37) months and she cites studies that indicate that women are sentenced more harshly than men. *Id.*

The difference between Ms. Whalen's and Mr. Bryant's sentences was driven not by gender, but by the marked disparity in their criminal histories. Mr. Bryant had a criminal history category of IV; Ms. Whalen a criminal history category of VI. Mr. Bryant had not committed a prior crime of violence and therefore started with a base offense level of 14 under USSG § 2K2.1(a)(6). Ms. Whalen had assaulted an officer in 2005, a felony under Maine law and a crime of violence under USSG § 2K2.1(4)(A). *See United States v. Ayotte*, No. 1:11-cr-00156-JAW, 2013 U.S. Dist. LEXIS 48497, *29-32 (D. Me. Apr. 3, 2013). As such, her base offense level was 20,

not 14. As the Court has noted, it applied a four-level enhancement to Ms. Whalen for possession of a firearm in connection with another felony under § 2K2.1(b)(6)(B), but not to Mr. Bryant. The result was that Mr. Bryant faced a guideline sentence of 30 to 37 months and Ms. Whalen faced a guideline sentence of 110 to 120 months. If the four-level enhancement were not applied, Ms. Whalen would have faced a guideline sentence range of 77 to 96 months. The Court imposed a within-guideline sentence—at the top of the guideline range—of 37 months on Mr. Bryant. It imposed a below-guideline sentence of 72 months on Ms. Whalen.

Ms. Whalen makes no argument that the guideline standards are gender-based and there is no evidence that Ms. Whalen's or Mr. Bryant's gender played any role in their guideline calculations. Although Ms. Whalen does not see it this way, using the guideline range as the starting point, the Court treated Ms. Whalen very gently, imposing a sentence 48 months lower than the top of her guideline range, 38 months lower than the bottom of her guideline range, and 5 months lower than the guideline range if calculated in the same fashion Mr. Bryant's was calculated. By contrast, the Court imposed a sentence on Mr. Bryant at the top of his guideline sentence range. The Court rejects Ms. Whalen's contention that it treated her more harshly because she is female.

In her motion, Ms. Whalen minimized the significance of her criminal history. *Def.'s Mot.* at 3. She asserts that "[a]ll criminal history previously was during the years of my youth of 18-21 years old, with the maximum punishment of 90 days in jail and the charges being that of driving while license suspended, illegal

14

use of tags, possession of marijuana and assault." *Id.* Ms. Whalen is not quite correct. She committed this federal offense on November 10, 2010. PSR ¶ 2. It was on May 25, 2008 (at the age of 22), when she committed her most recent crime before the federal offense: forgery (with priors) and receiving stolen property (with priors). PSR ¶ 40. On July 22, 2008, she was sentenced for these crimes to concurrent terms of nine months in jail. *Id.* Her commission of the federal offense underlying this motion occurred less than two years after she had been released from state jail on her May 25, 2008 state offenses. Ms. Whalen also has forgotten that she was charged and convicted of two counts of assaulting an officer on April 1, 2005, was sentenced on August 31, 2005 to two years' incarceration, all but ninety days suspended, and was placed on probation for two years. PSR ¶ 37. On February 7, 2006, she was found to have violated the terms of her probation and was sentenced to four months in jail; on September 21, 2006, she again violated her probation and was sentenced to 130 days in jail; on July 19, 2007, she violated her probation a third time and was sentenced to five days in jail; on December 20, 2007, she violated her probation a fourth time and was sentenced to four days in jail; and, on July 1, 2008, she violated her probation a fifth time and was sentenced to 365 days in jail. *Id.* Unfortunately, Ms. Whalen's criminal record reveals that she began committing crimes when she was 15 years old and continued unabated until she was 25 when she committed this offense.

In her motion, Ms. Whalen claims for the first time that she "was not aware of the guns, nor did she know of the whereabouts of whom they belonged to, nor did

she ever see any guns." *Def.'s Mot.* at 3. Ms. Whalen's current assertion is flatly contradicted by the Prosecution Version and the PSR, the contents of which she admitted were true. The Prosecution Version states that after Mr. Bryant went into the garage, "C[onfidential] W[itness] 1 [CW 1] observed [Ms.] Whalen make a few trips back to the truck with tools and guns." *Prosecution Version* at 2. It goes on to say that "[t]he four then drove to [Mr.] Bryant and [Ms.] Whalen's residence where CW 1 observed [Mr.] Bryant and [Ms.] Whalen take the firearms and other property into the residence." *Id.* The PSR reiterates Ms. Whalen's involvement with the firearms. PSR ¶¶ 2-5. Finally, Ms. Whalen pleaded guilty to a firearms charge—possession of stolen firearms or aiding and abetting the same, a violation of 18 U.S.C. § 922(j). During the Rule 11, Ms. Whalen acknowledged that she was pleading guilty to the firearms charge because she was actually guilty of that crime and for no other reason. *Minute Entry* (ECF No. 76). The Court does not accept Ms. Whalen's recently-pressed contention that she did not commit the crime that she repeatedly and expressly admitted she had committed.

Ms. Whalen also claims that her maximum sentence "would be that offered in the plea agreement" and that the "plea guidelines was a wors[t] case scenario of sentence." *Def.'s Mot.* at 3. The plea agreement in this case, however, did not offer a specific sentence. *Agreement to Plead Guilty* at 1-5 (ECF No. 74). To the contrary, the plea agreement expressly provided that "[t]he parties agree and understand that the Court has the discretion to impose any lawful sentence." *Id.* at 2. The maximum period of incarceration listed in the plea agreement was ten years. *Id.* at

1. Perhaps Ms. Whalen is confused about the appeal waiver, which provided that she waived the right to appeal a sentence that did not exceed 57 months. *See id.* at 2. But, the waiver of the right to appeal in the plea agreement did not require the Court to impose a sentence at or below fifty-seven months. Otherwise, the Court is uncertain why Ms. Whalen contends that her plea agreement required the imposition of a sentence of less than 72 months.

Ms. Whalen has also asked the Court "to please consider all of these factors and lead the way in prison reform for helping folks who clearly made bad choices in life and want to make a fresh start to be able to return to their children and support them as quickly as possible." *Id.* at 4. However, at sentencing, the Court considered all of the factors she is referring to—the need to spend time with her two young children, the young age at which many of her criminal history points accumulated, her problems with addiction and the trauma of a divorce, and the discrepancy between her and her codefendant's sentences. Ms. Whalen had the right to appeal the Court's sentence, including its analysis of those factors, but she did not do so. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that [she] is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (internal citations omitted). Ms. Whalen has not addressed the cause and prejudice standard, and nothing in her motion nor in the record allows the Court to conclude that she could meet this heavy burden. Therefore, these "other factors" do not provide Ms. Whalen any ground for relief.

Finally, in her motion and supplemental filings, Ms. Whalen provides the Court with citations to several cases, without explaining how they afford her relief. Ms. Whalen cites *Pepper v. United States*, 131 S. Ct. 1229 (2011), in conjunction with her request for the Court to consider that she has "worked diligently to rehabilitate [herself]." *Def.'s Mot.* at 4. *Pepper* is inapposite because the Supreme Court was dealing with what factors a district court could consider at resentencing, after an original sentence had been set aside on appeal. *Pepper*, 131 S. Ct. at 1240-50. The sentence in this case stands.

Likewise, Ms. Whalen cites *Rosemond v. United States* in her supplemental filing. *Rosemond* deals with the mens rea required to establish a conviction for aiding and abetting. It is unclear why Ms. Whalen contends that *Rosemond* is relevant. Ms. Whalen pleaded guilty to possession of stolen firearms. *Indictment* (ECF No. 1). Although the indictment charged both actual possession and aiding and abetting, Ms. Whalen admitted that she actually possessed the stolen firearms herself and helped load and unload them. *Prosecution Version*; PSR. The Court does not know why *Rosemond* pertains to Ms. Whalen's case and Ms. Whalen has not explained why. Last, Ms. Whalen's states that she "writ[es] . . . to confirm that [the Court] [is] presently considering the impending law changes" in the Smarter Sentencing Act. As that senate bill has not been enacted by Congress, it does not provide this Court with any authority to modify or vacate Ms. Whalen's sentence. With all this said, the Court has been and remains sympathetic to Ms. Whalen and wishes her well. As she acknowledged at her sentencing hearing, the root of her

18

criminal conduct, including this federal offense, has been a profound addiction to drugs. *Tr.* 33:25-34:3 ("Clearly I have made several bad choices in my life due to my addiction, and I need to take full responsibility for them and address my problem with professional help"). The Court is gratified to learn that Ms. Whalen has made progress while in prison. Assuming Ms. Whalen asserts control over the drugs that have controlled her, the Court is optimistic that Ms. Whalen was correct when she said during her allocution: "I have the intelligence and ability, once I am released from prison, to be a very good parent and a very productive, law-abiding citizen." *Id.* 35:24-36:1.

## IV. CONCLUSION

The Court DENIES Terra Whalen's Pro Se Motion to Vacate, Set Aside, and/or Remand Sentence Pursuant to 18 U.S.C. § 3582 (ECF No. 97).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2014