# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00033-JAW |
| | ) | |
| TERRA WHALEN | ) | |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

An incarcerated individual moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court concludes that she has not put forward extraordinary and compelling reasons justifying her release; therefore, the Court denies her request.

**I.    PROCEDURAL BACKGROUND**

On April 12, 2012, the Court sentenced Terra Whalen to seventy-two months of imprisonment, three years of supervised release, no fine or restitution, and a $100 special assessment for possession, storage, selling, or disposal of stolen firearms and aiding and abetting in violation of 18 U.S.C. § 922(j). *Min. Entry* (ECF No. 87); *J.* (ECF No. 89). Following her release from incarceration, Ms. Whalen violated her conditions of supervised release, resulting in a revocation of supervised release and the imposition of a time-served sentence followed by thirty-five months of supervised release. *Min. Entry* (ECF No. 136); *J.* (ECF No. 137). On February 5, 2019, the United States Probation Office filed another petition for revocation of Ms. Whalen's supervised release, alleging that that she violated her conditions due to multiple positive tests for use of illicit substances and suspension from her suboxone program. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 139). On May 20, 2019, Ms. Whalen admitted to the violations, and on August 5, 2019, the Court

sentenced her to twenty-four months of imprisonment followed by no supervised release. *Min. Entry* (ECF No. 162); *Min. Entry* (ECF No. 167); *J.* (ECF No. 169).

On April 10, 2020, Ms. Whalen filed a motion for a sentence reduction or immediate release due to the COVID-19 conditions at her facility. *Mot. to Reduce Sentence, Mot. for Immediate Release* (ECF No. 172). The Government responded in opposition on April 13, 2020, stating in part that Ms. Whalen had failed to exhaust her administrative remedies. *Gov't's Opp'n to Def.'s Req. for Sentence Reduction or Immediate Release* (ECF No. 173). On April 15, 2020, Ms. Whalen replied, and on April 17, 2020, the Court held a telephone conference with counsel. *Def.'s Resp. to Gov't's Opp'n for Sentence Reduction or Immediate Release* (ECF No. 174); *Min. Entry* (ECF No. 176). On April 24, 2020, Ms. Whalen withdrew her motion. *Def.'s Mot. to Withdraw Mots. for Sentence Reduction, Immediate Release, Compassionate Release* (ECF No. 179).

On June 1, 2020, Ms. Whalen filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *Def.'s Mot. for Compassionate Release* (ECF No. 181) (*Def.'s Mot.*). The Government responded in opposition on June 4, 2020. *Gov't's Opp'n to Def.'s Req. for Compassionate Release* (ECF No. 185) (*Gov't's Opp'n*). On June 10, 2020, Ms. Whalen replied. *Def.'s Reply to Gov't's Opp'n to Def.'s Mot. for Compassionate Release* (ECF No. 191) (*Def.'s Reply*).

## II.   PARTIES' POSITIONS

### A.   Terra Whalen's Motion

Ms. Whalen asks the Court to grant her compassionate release. *Def.'s Mot.* at 1. She states that "she has fully exhausted her administrative remedies through the bureau of prisons and she has been denied." *Id.* She points to her attachment to the motion, which is a letter from the warden of the Federal Correctional Institute in Danbury (FCI Danbury), her facility, denying her request for a reduction in sentence under § 3582(c)(1)(A) based on concerns about COVID-19. *Id.*, Attach. 1, *Ex. 1: Resp. to Inmate Req. to Staff Member* (*Denial Letter*). Further, Ms. Whalen argues, "extraordinary and compelling reasons" justify compassionate release because her roommate was diagnosed with COVID-19, she has been forced to sleep in the kitchen on a cot with no mattress, and the conditions at the facility "continue to be below par . . . ." *Def.'s Mot.* at 1. She states that it is "not healthy for [her] to be in a space where people are being diagnosed with COVID-19." *Id.*

### B.   The Government's Opposition

The Government argues that Ms. Whalen's motion should be denied because the Bureau of Prisons (BOP) denied her request, she does not detail how FCI Danbury is failing to address her concerns, and she has not demonstrated "extraordinary and compelling reasons" that warrant reducing or modifying her sentence. *Gov't's Opp'n* at 1. It states that Ms. Whalen exhausted her administrative remedies but that the seriousness of her crime, the amount of time she has served, and her personal history and characteristics do not support a sentence reduction. *Id.* at 4. The Government

adds that Ms. Whalen "committed a serious offense and failed to be successful on supervised release," so "[t]he sentence reduction now requested by [her] would fail entirely to satisfy any of the purposes of sentencing and would not be appropriate." *Id.* at 4-5.

The Government discusses a recent habeas corpus petition filed by individuals with COVID-19 risk factors incarcerated at FCI Danbury against the facility alleging that FCI Danbury failed to take adequate safety measures to protect them. *Id.* at 5 (citing *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350 (D. Conn. May 12, 2020)). It explains that the court granted the incarcerated individuals' motion for a temporary restraining order and issued an order requiring the warden to develop a process for evaluating inmates with COVID-19 risk factors for home confinement and other forms of release. *Id.* (citing *Martinez-Brooks*, 2020 WL 2405350, at *1-2). However, the Government argues, the "generalized threat[]" of COVID-19 "does not alone provide a basis for a sentence reduction." *Id.* While COVID-19 "is not irrelevant to a court's analysis of a motion under § 3582(c)(1)(A)," the Government continues, its relevance is limited to individuals with "a chronic medical condition that has been identified by the [Centers for Disease Control and Prevention (CDC)] as elevating the inmate's risk of becoming seriously ill from COVID-19," though in those cases, the Court should also take into account the proposed release plan and the prevalence of COVID-19 in the institution and the proposed release location. *Id.* at 6. According to the Government, COVID-19 alone does not constitute an extraordinary and compelling reason, and ruling otherwise

4

would "be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement." *Id.*

The Government points out that Ms. Whalen "has not asserted that she has any medical conditions that would make her more vulnerable to COVID-19" and that her medical records support this view. *Id.* at 7. Rather, it states, she based her administrative request on her children's caregiver having COVID-19, her desire to be home with her children, and her cellmate having COVID-19. *Id.* The Government does not view these reasons as demonstrating extraordinary and compelling reasons to modify Ms. Whalen's sentence. *Id.*

### C. Terra Whalen's Reply

Ms. Whalen agrees with the Government on the applicable law but highlights that "other reasons that are extraordinary and compelling can be considered independently or in conjunction with any of the other reasons listed in" the application note to United States Sentencing Guideline (U.S.S.G.) § 1B1.13(1)(D). *Def.'s Reply* at 1-2. She argues that this section applies to her case because "COVID-19 in and of itself is extraordinary." *Id.* at 4. She admits that she does not have an underlying health issue but states that her extreme conditions, including having to sleep in the kitchen on a cot, and the higher likelihood of her contracting COVID-19 in FCI Danbury than at her family friend's house in Swanville, Maine, where she

5

would go if released, present a substantial health risk. *Id.* at 3. She adds that her children's caregiver has recovered from COVID-19 and is back to work. *Id.*

Ms. Whalen also notes that, due to limitations on incarcerated individuals, "there is no way for any defendant to provide 'proof' of the conditions" in the facility other than testimony. *Id.* at 2. She points to *Martinez-Brooks* as containing a description of the conditions in FCI Danbury. *Id.*

### III. LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A)(i) states:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

While some statutory preconditions to relief are jurisdictional (and thus, if not met, bar consideration of the requested relief on its merits), others constitute claim-processing rules which—while mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it"—may be waived or forfeited by the adverse party. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (alteration in original) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). Where a compassionate release motion is properly before the Court, the Court must determine whether "extraordinary and compelling reasons warrant" the movant's release, considering in

its determination "the factors set forth in section 3553(a)" and "applicable policy statements issued by the Sentencing Commission . . .." *Id.*

The United States Sentencing Commission issued a policy statement under U.S.S.G. § 1B1.13 for addressing compassionate release motions under § 3582(c)(1)(A).[1] The Guidelines note that the movant must meet the "requirements of subdivision (2) . . .." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). This subdivision provides that the Court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) . . .." *Id.* § 1B1.13(2).

Section 3142(g) sets forth the factors a court must consider before releasing a person pending trial and these standards are incorporated into the assessment of a request for compassionate release. They include (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). Regarding the history and characteristics of the person, the statute provides that the court must consider:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to

---

[1] The Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and its provisions are therefore not directly related to the unique circumstances presented by a global pandemic. Nevertheless, the Court finds the policy provisions are a useful starting point for its analysis of the compassionate release motion.

7

>
> drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . ..

18 U.S.C. § 3142(g)(3)(A-B).

Once a court has made its dangerousness determination, § 1B1.13 provides that the court should determine whether "extraordinary and compelling reasons" exist to release the defendant. U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). The policy statement provides that "extraordinary and compelling reasons" may exist under any of the following circumstances:

> (A) **Medical Condition of the Defendant.—**
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a

      correctional facility and from which he or she is not expected to recover.

(B)    **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    **Family Circumstances.**—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)    **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* § 1B1.13 cmt. n.1(A-D). The policy statement further provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* § 1B1.13 cmt. n.2. Finally, the policy statement states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* § 1B1.13 cmt. n.3.

    Ms. Whalen, as the movant, has the burden of showing that she is entitled to a sentence reduction, and "the Court 'has "broad discretion in deciding whether to grant or deny a motion for sentence reduction."'" *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 WL 3104043, at \*5 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 WL 2404969, at \*2 (D.N.H. May 12, 2020)).

9

## IV. DISCUSSION

### A. The Exhaustion Requirement

The Court previously ruled that the exhaustion provision of 18 U.S.C. § 3582(c)(1)(A) is mandatory, but it has not yet decided whether that exhaustion provision is jurisdictional. *See United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020); *see also Curtis*, 2020 WL 3104043, at *2 n.2. If the exhaustion provision is a mandatory claim-processing rule, the Court views the Government's decision to decline to challenge Ms. Whalen's compliance as a waiver, and the Court will proceed to the merits of Ms. Whalen's motion. *See Fort Bend*, 139 S. Ct. at 1849 ("[A]n objection based on a mandatory claim-processing rule may be forfeited" if the objector waits too long to raise the point); *see also United States v. Reyes-Santiago*, 804 F.3d 453, 458 (1st Cir. 2015) (explaining that objections based on claim-processing rules may be waived or forfeited); *United States v. Galindo-Serrano*, 925 F.3d 40, 45 (1st Cir. 2019) (same). Alternatively, if the exhaustion provision is jurisdictional, the Court must conduct an inquiry into whether Ms. Whalen complied with the exhaustion requirement and whether her motion is properly before the Court. *See Britton*, 2020 WL 2404969, at *3 ("A jurisdictional rule is one that 'governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction'" (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011))). The Court reaches this question here because Ms. Whalen arguably has not complied with the exhaustion requirement.[2]

---

[2] Ms. Whalen cannot be said to have fully exhausted her administrative remedies within the meaning of § 3582(c)(1)(A) because the warden of Ms. Whalen's facility denied her request within

In *Arbaugh v. Y & H Corp*, 546 U.S. 500 (2006), the United States Supreme Court defined a "readily administrable bright line" test to determine when a statutory limitation is jurisdictional: If Congress "clearly states" that the limitation is jurisdictional, then it is; however, "when Congress does not rank a statutory

---

thirty days of its submission and Ms. Whalen did not appeal in the manner laid out in the warden's denial letter. *Denial Letter*. However, the warden's denial letter is dated May 1, 2020, and Ms. Whalen did not file her motion until June 1, 2020. Thus, at least thirty days had passed after Ms. Whalen submitted her request to the warden of her facility by the time she filed her motion with the Court.

The Court is aware that the district courts to address whether the exhaustion provision of section 3582(c)(1)(A) is satisfied by the lapse of thirty days when the warden has timely denied the defendant's request have split. *Compare United States v. Rembert*, No. 2:12-cr-00066-DBH, 2020 U.S. Dist. LEXIS 107423, at *2-3 (D. Me. June 19, 2020) (joining "those courts that have concluded that the 30-day language is designed to ensure that the Warden acts timely and that when she does, the prisoner needs to exhaust his administrative appeal rights before proceeding to court" (citing cases)), *United States v. Saenz*, No. 97CR2106-JLS, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020) (holding that the defendant did not comply with the exhaustion requirement of § 3582(c)(1)(A) because the warden of his facility denied his compassionate release request and "lapse" in the context of the statute means that the warden must fail to act on a compassionate release request for thirty days) (citing *United States v. Miller*, No. 2:16-cr-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020))), *and United States v. Nance*, No. 7:92CR00135, 2020 WL 114195, at *2 (W.D. Va. Jan 10, 2020) (acknowledging that "the literal language permits" a defendant to file a compassionate release motion after thirty days have passed and despite a failure to appeal a timely decision by the warden but not applying this literal reading due to the "extreme unlikelihood of any administrative appeal within the bureaucracy of the B[OP] being completed in 30 days"), *with United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *3-5 (W.D. Pa. May 29, 2020) (referring to the thirty-day period of the statute as a "back stop," highlighting the "whichever is earlier" language in the statute as providing "two, *alternative* ways that a prisoner can 'exhaust,'" finding the defendant properly exhausted despite his failure to appeal a denial by the warden of his facility, and stating that this reading of the statute, "[i]n addition to being compelled by the text," "is more consistent with Congress's clear intent in passing the First Step Act"), *United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *2 (D. Neb. May 26, 2020) ("It wouldn't make sense to conclude that a prisoner can go to court within 30 days if the delay is the warden's, but the prisoner is interminably stuck if the warden makes a timely decision but the BOP's Regional Director or General Counsel don't"), *United States v. Guzman Soto*, No. 1:18-cr-10086-IT, 2020 WL 1905323, at *4 (D. Mass. Apr. 17, 2020) (stating that requiring a defendant to appeal a denial by the warden once thirty days have passed "ignores the plain language of the statute"), *and United States v. Laureti*, No. 16-60340-CR-BLOOM, 2019 WL 7461687, at *1 (S.D. Fla. Dec. 17, 2019) ("A plain reading of the statute reflects that the Defendant may seek relief after the lapse of 30 days from the date the Warden receives the Defendant's request"); *see also United States v. Vence-Small*, No. 3:18-cr-00031 (JAM), 2020 WL 1921590, at *4 (D. Conn. Apr. 20, 2020) ("A defendant must either fully exhaust all of the BOP's administrative appeal requirements or, in the alternative, a defendant must wait for 30 days after seeking relief from the prison warden before filing a motion for relief with a court").

The Court need not rule on this debate here because it holds that the exhaustion requirement is a claim-processing rule and that the Government waived the provision by conceding that Ms. Whalen exhausted her administrative remedies. *See Gov't's Opp'n* at 4.

limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 515-16; *see also United States v. Shields*, 649 F.3d 78, 88 (1st Cir. 2011) (applying the *Arbaugh* test). Congress need not "incant magic words" to "speak clearly." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *see also Fort Bend*, 139 S. Ct. at 1850. Rather, "'context, including [the Supreme Court's] interpretations of similar provisions in many years past,' [is] probative of whether Congress intended a particular provision to rank as jurisdictional." *Auburn*, 568 U.S. at 153-54 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168 (2010)).

Looking specifically at exhaustion requirements, the First Circuit held that "[e]xhaustion of administrative remedies is a jurisdictional requirement only when Congress clearly ranks it as such." *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007). The First Circuit also agreed with the D.C. Circuit that a jurisdictional bar requires "sweeping and direct language that would indicate" the bar "rather than a mere codification of administrative exhaustion requirements." *Casanova v. Dubois*, 289 F.3d 142, 146 (1st Cir. 2002) (quoting *Ali v. Dist. of Columbia.*, 278 F.3d 1, 5-6 (D.C. Cir. 2002)) (analyzing the exhaustion requirement of the Prison Litigation Reform Act of 1995).

Circuit courts are split on whether the limitations of § 3582(c) are jurisdictional. *See Lugo*, 2020 WL 1821010, at *3 (outlining the circuit split). The First Circuit has not yet ruled on the issue, *see United States v. Ramirez*, Crim. No. 17-10328-WGY, 2020 WL 2404858, at *6 (D. Mass. May 12, 2020) (citing *Lugo*, 2020

WL 1821010, at *3), although it quoted in dicta since-overruled language from the Seventh Circuit identifying § 3582(c) as a "real 'jurisdictional' rule rather than a case-processing requirement." *See United States v. Griffin*, 524 F.3d 71, 84 (1st Cir. 2008) (quoting *United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006), *overruled by United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015)); *see also Lugo*, 2020 WL 1821010, at *3 (discussing *Griffin* in this context). The Sixth Circuit, the first circuit court to reach whether § 3582(c)(1)(A) is jurisdictional, held that "[n]othing in this administrative exhaustion requirement clearly limits [their] jurisdiction" because its language "neither 'speak[s] in jurisdictional terms' nor 'refer[s] in any way to the jurisdiction' of the courts." *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020) (some alterations in original) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). The *Alam* Court added that "[t]his exhaustion requirement in material ways mimics Title VII's requirement, which is non-jurisdictional." *Id.* (citing *Fort Bend*, 139 S. Ct. at 1847, 1851-52).

District courts within this circuit have so far concluded that the exhaustion requirement in § 3582(c)(1)(A) is nonjurisdictional. In *United States v. Calhoun*, a District of Maine Court held that § 3582(c)(1)(A) is a non-jurisdictional claim-processing rule. *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist. LEXIS 117527, at *6 (D. Me. July 1, 2020) (citing *Ramirez*, 2020 WL 2404858, at *7). In *Guzman Soto,* a District of Massachusetts Court held that that "[i]n keeping with the First Circuit's decision in *Casanova* and the Supreme Court's caution that courts must look for clear Congressional intent, the lack of jurisdictional language

13

in § 3582(c)(1)(A) answers the jurisdictional question." 2020 WL 1905323, at *3 (citing *Impson*, 503 F.3d at 33). The *Guzman Soto* Court referenced *Lugo* and noted that none of the circuit decisions on the § 3582(c) limitation dealt specifically with § 3582(c)(1)(A)'s exhaustion requirements. *Id.* Finally, the *Guzman Soto* Court agreed with the Seventh Circuit's point in *Taylor* that the Supreme Court in *Freeman v. United States*, 564 U.S. 522 (2011), did not speak of § 3582(c)(2) in jurisdictional terms when considering a related issue. *Id.* In *Ramirez,* another District of Massachusetts Court agreed with *Guzman Soto*, holding that the § 3582(c)(1)(A) limitation is not jurisdictional because it does not contain sweeping and direct jurisdictional language, it is not part of the jurisdictional portion of the criminal code, and the Supreme Court did not speak in jurisdictional terms in *Freeman*. 2020 WL 2404858, at *7 (citing *Taylor*, 778 F.3d at 671).

District courts outside of the First Circuit are split on the issue. *Compare United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (extending the Second Circuit's holding that § 3582(c)(2) is nonjurisdictional to § 3582(c)(1)(A) because § 3582(c)(1)(A) "simply delineates the process for a party to obtain judicial review, not referring to the adjudicatory capacity of courts" and because it is not a part of the jurisdictional portion of the criminal code), *with United States v. Johnson*, Crim. No. RDB-14-0441, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (holding that "the administrative exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature" because the words "may not" before the enumerated

14

exceptions "speak to the Courts authority to hear a case" and constitute "an explicit restriction on the Court's authority to modify sentences").

The Court agrees with the Sixth Circuit and the other district courts within Maine and the First Circuit that the exhaustion requirement of § 3582(c)(1)(A) is nonjurisdictional. The section states that a court "may" reduce a defendant's term of imprisonment "upon" motion by the BOP or motion by the defendant after the defendant has complied with the exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). The Court does not view these words to be "sweeping and direct language" that establishes a jurisdictional bar. While § 3582(c) uses the words "may not" to introduce the exceptions, this phrasing—especially when not applied specifically to the exhaustion requirement—is not enough to meet the high "clear statement" standard the Supreme Court and the First Circuit require for a provision to be jurisdictional. Moreover, as mentioned in *Taylor*, *Ramirez*, and *Haney*, § 3582 is not part of a jurisdictional portion of the criminal code, but rather a part of the chapter that generally concerns sentences of imprisonment. Finally, as discussed in *Alam*, the Supreme Court's finding in *Fort Bend* that the Title VII exhaustion requirement—requiring either exhaustion of administrative remedies or the passage of 180 days—is nonjurisdictional is instructive here because of the similarities between the exhaustion provisions. *See Alam*, 960 F.3d 831; *see also Auburn*, 568 U.S. at 153 (viewing the Supreme Court's interpretations of similar provisions in the past as relevant context in determining whether Congress intended a provision to rank as jurisdictional). Therefore, the Court holds that the exhaustion requirement

of § 3582(c)(1)(A) is a claim-processing rule. Finally, as noted earlier, the Court views the Government's statement that Ms. Whalen exhausted her administrative remedies as a waiver and the Court therefore turns to the merits of Ms. Whalen's motion.

### B. The Merits

The Court denies Ms. Whalen's request for compassionate release because she has not demonstrated extraordinary or compelling reasons for her release. Ms. Whalen agrees with the Government that she does not have an underlying health issue that makes her more vulnerable to COVID-19. *Def.'s Reply* at 3; *Gov't's Opp'n* at 7. Her argument that COVID-19 is in and of itself extraordinary is not convincing, as it implies that all inmates in FCI Danbury and any other facility with ongoing COVID-19 cases should be granted compassionate release. As the Court previously noted, it agrees with the Third Circuit's dictum in *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020): "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *Curtis*, 2020 WL 3104043, at *5 (quoting *Raia*, 954 F.3d at 597).

Ms. Whalen's circumstances—sleeping on a cot in the kitchen because her cellmate has COVID-19—are unfortunate and the Court does not discount the sincerity of her concern that she is susceptible to contracting this dangerous virus while in prison. Based on the findings in *Martinez-Brooks*, the Court accepts the premise that the conditions at FCI Danbury have been uncomfortable and frightening

16

for many, even most inmates, especially given the death from COVID-19 at FCI Danbury. *See Def.'s Reply* at 3. Moreover, the Court acknowledges and understands Ms. Whalen's desire to be with her children during the pandemic, particularly while their caregiver had COVID-19. However, without any underlying health issues relevant to COVID-19, Ms. Whalen's situation does not justify compassionate release.

The Court has the authority to order Ms. Whalen's release under 18 U.S.C. § 3582(c)(1)(A) despite her failure to demonstrate medical conditions that make her vulnerable to COVID-19; however, after considering the United States Sentencing Commission's policy statement and the sentencing factors in 18 U.S.C. § 3553(a), the Court declines to exercise that authority here.

## V.   CONCLUSION

The Court DENIES Terra Whalen's Motion for Compassionate Release (ECF No. 181).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of July, 2020